### In re J. M. ACHESON CO.

### GINSBURG et al. v. MEARS et al.

#### (Circuit Court of Appeals, Ninth Circuit. May 24, 1909.)

#### No. 1,693.

BANKRUPTCY (§ 345*)—CLAIMS—PRIORITIES—TRUST FUNDS.

Where a bankrupt sold property consigned to him under a contract which required him to hold the proceeds of sales in trust, separate from his own funds, until paid over to the owner, and in violation of such trust mingled the trust funds with his own and used them in his business, the owner is entitled to recover such trust funds in full, in so far as he can show that they or property into which they were converted came into the hands of the bankrupt's trustee and have increased the estate, but no further.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 345.*]

Petition for Revision of Proceedings of the District Court of the United States for the District of Oregon, in Bankruptcy.

The J. M. Acheson Company, a mercantile corporation, was, with its expressed consent, duly adjudged a bankrupt on June 2, 1908. Thereafter a receiver was appointed by consent, and all assets of the corporation were turned over to him for the benefit of all the creditors. The receiver was afterwards named as trustee. Among the claims filed against the estate was one by the firm of Ginsburg Bros., of Chicago, who set forth in their petition filed with the referee that the J. M. Acheson Company owed it $2,-228.50 on an open account for merchandise delivered by the firm of Ginsburg Bros. to the said J. M. Acheson Company on consignment within two years last past before filing the claim, bills for which were annexed to the petition and made part thereof. Claimants further set forth that "the agreed value of the goods shipped by deponent's said firm to said bankrupt was $4,-212.25, and all of said goods were disposed of by said bankrupt, excepting goods to the value of $1,483.75, which goods were returned by order of this honorable court. Of the moneys received for said goods which were sold, said bankrupt has paid this deponent's firm the sum of $500 only, leaving said balance of $2,228.50 due this deponent's firm; that no part of said claim has been paid; that there are no set-offs or counterclaims to the same; and that this deponent has not, nor has his said firm, nor has any person by their order, or to this deponent's knowledge or belief, for their use, had or received any manner of security for said claim whatever; that no note has been received for said account nor any judgment rendered thereon; that said items of said claim became due as soon as sales of said goods were made by said bankrupt, and all funds received by said bankrupt from the sales of said goods which were not paid over to this deponent's firm were to be held in trust by said bankrupt and said funds were trust funds. This deponent is informed and believes and therefore says that said bankrupt failed to keep said trust fund separate and distinct from other funds, but wrongfully mixed and commingled the same with the money of said bankrupt, and said bank-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

rupt has used said trust fund in payment of its employés and other running expenses, in paying other creditors, and in purchasing sundry other goods, wares, and merchandise which composed the assets of said bankrupt, which assets were taken charge of by the receiver appointed by this court. Said assets were disposed of by said receiver for the sum of ————. Said receiver was thereafter selected and now is the trustee of said bankrupt, and still has in his possession funds received from the sale of said assets more than sufficient in amount to satisfy this claimant's claim in full." The prayer was that the claim be allowed in full.

The trustee filed a general demurrer to the petition, and, after hearing, the referee, without formal action upon the demurrer, disallowed the claim of petitioners as a preferred one, but directed that it be filed as a general claim.

Petitioners sought a review of the referee's order. The District Court affirmed the order of the referee, and allowed the claim as a general one against the estate. Petitioners appealed to this court.

Clarence H. Gilbert and James Cole, for petitioners.

J. V. Beach, N. D. Simon, A. F. Flegel, and Geo. W. Joseph, for respondent.

Before GILBERT and ROSS, Circuit Judges, and HUNT, District Judge.

HUNT, District Judge (after stating the facts as above). While the claimants' petition praying that their claim be allowed as a preferred one is defective in not setting forth with more definiteness facts as to how much of the trust funds alleged to have come into the bankrupt's hands were used by the bankrupt in payment of its employés and its running expenses, or in paying its other creditors, or in purchasing sundry other goods and merchandise, nevertheless we think the petition is sufficient to show that there was a delivery to the bankrupt by petitioners of certain goods on consignment of the value of $4,212.25, such delivery having been made within two years prior to the filing of claimants' petition, and that the bankrupt had disposed of the goods so delivered on consignment except goods of the value of $1,483.75, which were returned to petitioners by order of the bankruptcy court. It also sufficiently appears that the bankrupt had only paid $500 of the money received by it from the sales of the goods so delivered to it; that the moneys received by the bankrupt were due as soon as sales of said goods were made; that all funds received by the bankrupt from the sales of said goods which were not paid over to petitioners were to be held in trust and in a fund separate from the other funds of the bankrupt, and that the bankrupt wrongfully mixed the funds so received by it with its own and used the said trust funds to pay its current running expenses, its creditors other than petitioners, and to buy merchandise, which merchandise composed the bankrupt's assets which passed into the hands of the receiver of the court and were by him sold. It is also to be taken as a fact that the trustee in bankruptcy is the same person who was the receiver, and that as trustee he has in his possession funds received from the sale of said assets more than enough to pay the claimants' claim in full. The question arising then upon these allegations is, do they constitute a prima facie showing of a charge upon the funds in the trustee's hands in favor of the owners of the goods? And, if so, to what extent does it reach?

The doctrine of equity as sustained by the Supreme Court in National Bank v. Insurance Co., 104 U. S. 65, 26 L. Ed. 693, approving the rule in Hallett's Estate, 13 Ch. Div. 696, is that if property is intrusted to another to sell and pay over the proceeds, and sale is made, the beneficial owner is entitled to the proceeds, whatever be their form, provided only he can identify them. If the proceeds cannot be identified because the trust money is mingled with the money of the trustee, then the cestui que trust is entitled to a charge upon the new investment to the extent of the trust money traceable into it. Justice Matthews writes of the rule as going far enough to cover not alone express trustees and agents, but bailees, rent collectors, or "anybody else in a fiduciary position," and as making "no difference between investments in the purchase of lands or chattels or bonds or loans or moneys deposited in a bank account," and he shows very clearly that the foundation of the doctrine rests upon the "very idea of trusts," which can only be preserved by a strict enforcement of the principle that one who holds a relationship of trust is not allowed to make private use of trust property. "The rule in equity is 'that, as between cestui que trust and trustee, and all parties claiming under the trustee otherwise than by purchase for a valuable consideration without notice, all property belonging to a trust, however much it may be changed or altered in its nature or character, and all the fruit of such property, whether in its original or altered state, continues to be subject to or affected by the trust. This settled doctrine of equity has its basis in the right of property. * * * But it is the general rule, as well in a court of equity as in a court of law, that, in order to follow trust funds, and subject them to the operation of the trust, they must be identified.' Andrews, J., in Cavin v. Gleason, 105 N. Y. 256, 11 N. E. 504." In re Hicks, 170 N. Y. 195, 63 N. E. 276.

Application of the doctrine as stated was made by this court in City of Spokane v. First Nat. Bank, 68 Fed. 982, 16 C. C. A. 85, where it was held that where a trustee had wrongfully mixed and commingled with his own funds moneys known to be trust funds, and thereafter wrongfully invested such funds in securities which remained in his hands, the owner of such funds was entitled to follow the same in the form in which they had been converted, and could impress a trust for his benefit.

In carrying out the rule, when it comes to proof, the owner must assume the burden of ascertaining and tracing the trust funds, showing that the assets which have come into the hands of the trustee have been directly added to or benefited by an amount of money realized from the sales of the specific goods held in trust; and recovery is limited to the extent of this increase or benefit. City Bank of Hopkinsville v. Blackmore, 75 Fed. 771, 21 C. C. A. 514; Cushman v. Goodwin, 95 Me. 353, 50 Atl. 50. If, however, he succeeds in making requisite proof, it then devolves upon the bankrupt, or the trustee who takes the property of the bankrupt in the same relation that it was held by the bankrupt, to distinguish between what is his and that of the cestui que trust. Smith v. Mottley, 150 Fed. 266, 80 C. C. A. 154; Smith v. Township of Au Gres, 150 Fed. 257, 80 C. C. A. 145, 9 L. R. A. (N. S.) 876.

We do not mean to be understood as holding that equity will grant to a cestui que trust relief against any assets in the hands of a trustee, for it will not go farther than to give a lien when the facts are that there remain in the estate specific funds or property which have increased the assets of the estate, and which represent the proceeds of the specific property intrusted to the bankrupt. Lowe v. Jones, Adm'r, 192 Mass. 94, 78 N. E. 402, 6 L. R. A. (N. S.) 487, 116 Am. St. Rep. 225. Moreover, if there has been expenditure, and the funds are gone, and no specific property or money is found instead of the funds, it is inequitable that some other property found should be applied to pay one creditor in preference to another. So, funds that have been dissipated or that have been used to pay other creditors or that have been spent to pay current business expenses are not recoverable, because they are gone and there is nothing remaining to be the subject of the trust. This qualification of the general rule is to be applied to the facts pleaded in the present case, inasmuch as it is alleged that some of the trust moneys were used by the bankrupt in paying its employés, and in the expenses of running its business, and in paying other creditors. For them there can be no recovery. Slater et al. v. Oriental Mills et al., 18 R. I. 352, 27 Atl. 443; Nonotuck Silk Co. v. Flanders, 87 Wis. 237, 58 N. W. 383. But for the moneys represented by assets which went into the hands of the receiver under the circumstances alleged, and which the petition charges that the receiver had when claimants filed their petition, there appears to be an equitable claim, to support which petitioners should be allowed to introduce evidence.

Our conclusion is that the lower court erred in affirming the order of the referee denying claimants' petition. The order of the District Court is therefore reversed, and the case remanded with directions to send the matter back to the referee with instructions to overrule the demurrer interposed by the trustee and to require an answer.